**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
                              )
THE FUND FOR ANIMALS, et al., )
                              )
          Plaintiffs,         )
                              )
     v.                       )    Civ. No. 04-1913 (EGS)
                              )
GALE NORTON, et al.,          )
                              )
          Defendants.         )
                              )
```

**MEMORANDUM OPINION**

In 2004, plaintiffs The Fund for Animals, Bluewater Network, Walt Farmer, George Wuerthner, and Richard Meis filed suit challenging the National Park Service's ("NPS") 2004 Temporary Winter Use Management Plan for Yellowstone National Park ("2004 Temporary Winter Use Plan") and the denial of Bluewater Network's 1999 Rulemaking Petition. Pending before the Court is plaintiffs' Renewed Motion for Summary Judgment and Request for Further Proceedings. Upon careful consideration of the motion, the response and reply thereto, supplemental briefing on whether this case is moot, the applicable statutes and rulemaking, and the entire record, the Court **DENIES** plaintiffs' motion and **DISMISSES** this case with prejudice.

## I.   BACKGROUND

Plaintiffs filed an Amended Complaint in this case on December 15, 2004, which raises four claims. The first three claims relate to NPS's 2004 Temporary Winter Use Plan.

Plaintiffs' Claim Four challenges the Department of the
Interior's ("DOI") denial of Bluewater Network's Rulemaking
Petition seeking a ban on snowmobiling in all national parks.

Litigation related to the use of snowmobiles and impact of
trail grooming in Yellowstone National Park, Grand Teton National
Park, and the John D. Rockefeller, Jr. Memorial Parkway
(collectively, "Yellowstone" or "the Parks") has been ongoing for
more than ten years.  This Court's previous decision in *Fund for
Animals v. Norton*, 294 F. Supp. 2d 92 (D.D.C. 2003), details the
history of litigation and rulemaking preceding the 2004 Temporary
Winter Use Plan.  The 2003 decision also provides background on
how Bluewater Network's 1999 Rulemaking Petition was handled
prior to this lawsuit.  Below is a brief summary of the
background of the 2004 Temporary Winter Use Plan and Bluewater
Network's 1999 Rulemaking Petition that is relevant to the
current lawsuit.

### A.   2004 Temporary Winter Use Plan

On November 10, 2004, NPS published its Final Rule
regulating winter use in the Parks.  *See* 69 Fed. Reg. 65,348 *et
seq.* (Nov. 10, 2004) (codified at 36 C.F.R. pt. 7).  The Rule, or
2004 Temporary Winter Use Plan, became effective on December 10,
2004.  *Id*. at 65,348.  The Rule, which provides guidelines for
winter use of snowmobiles and snowcoaches in the Parks, indicated
that it would only manage winter visitation and recreational use

2

in the Parks for up to three winter seasons, with the 2006-2007 winter season being the last season.  *Id*. at 65,348; 36 C.F.R. §§ 7.13(*l*)(3)(ii), 7.13(*l*)(4)(vii), 7.21(a)(3)(ii), 7.21(a)(4)(vii), 7.22(g)(3)(ii).  By its own terms, therefore, the Rule authorizing snowmobile and snowcoach use in the Parks expired in March 2007 with the end of the 2006-2007 winter season.  For each of the three winter seasons from 2004-2005 through 2006-2007 when the Rule was in effect, Congress enacted appropriations bills for the Department of the Interior that included a provision indicating that NPS's 2004 Temporary Winter Use Plan found in 69 Fed. Reg. 65,348 *et seq*. would be in force and effect for the relevant winter season.  *See* Pub. L. No, 108-447, § 146, 118 Stat. 2809, 3074 (2004); Pub. L. No. 109-54, § 126, 119 Stat. 499, 525 (2005); Pub. L. No. 109-383, § 135 (2006); Pub. L. No. 110-5, § 20516, 121 Stat. 8, 27 (2007); *see also* 72 Fed. Reg. 27,499, 27,501 (proposed May 16, 2007) (to be codified at 36 C.F.R. pt. 7) ("Congress has three times included language in appropriations legislation for the Department of the Interior requiring that the temporary winter use rules remain in effect for the winter seasons of 2004-2005, 2005-2006, and 2006-2007.").

**B.   Bluewater Network's Rulemaking Petition**

In January 1999, plaintiff Bluewater Network and other organizations submitted a Rulemaking Petition to the Department

of the Interior asking DOI to issue regulations prohibiting trail grooming and recreational snowmobiling throughout the entire National Park System.  After a year-long review of the environmental impact of snowmobiling on National Parks' resources and several reports, DOI issued an agency memorandum in April 2000 concluding that a favorable response to the Rulemaking Petition was warranted.  The memorandum proposed that "all parks which currently allow recreational snowmobile use under a special regulation . . . should repeal these special regulations immediately and halt recreational snowmobile use."  Mem. from Donald Berry, Assistant Sec'y for Fish and Wildlife and Parks at 4 (Apr. 26, 2000) ("Berry Memorandum"), A.R. 600076.  In late September 2002, NPS began preparing a rule that would repeal general regulations allowing parks to promulgate Special Regulations governing snowmobile use.  The rule was supposed to "'bring the Service into compliance'" with governing regulations. *See Fund for Animals*, 294 F. Supp. 2d at 102 (quoting Draft Proposed Rule, Snowmobile Use Within the National Park System (Sept. 21, 2000)).  The Draft Proposed Rule was never issued. Moreover, until ordered to do so by this Court, no one at DOI even responded to Bluewater Network's Rulemaking Petition.

On February 17, 2004, Assistant Secretary for Fish and Wildlife and Parks Craig Manson, on behalf of the Department of the Interior, formally denied Bluewater Network's Rulemaking

Petition.  *See* Letter from Craig Manson to Russell Long and
attached Mem. from Craig Manson, Assistant Sec'y for Fish and
Wildlife and Parks (Feb. 17, 2004) ("Manson Memorandum"), A.R.
106216-106221.  Although DOI acknowledges in the Manson
Memorandum that DOI originally determined in the Berry Memorandum
that the Rulemaking Petition should be granted, DOI ultimately
reversed its position.  In the Manson Memorandum, DOI indicated
that it prefers to address the regulation of snowmobiles and road
grooming on a park-by-park basis as opposed to issuing a global
prohibition on recreational snowmobile use and road grooming for
snowmobiles.  The Manson Memorandum also notes that snowmobiles
now are using newer technology than they did in 2000 and
therefore have less adverse impact on park resources.  The Manson
Memorandum further indicates that there is no reason to believe
that current Executive Orders and regulations are inadequate and
that the primary problem is "compliance with existing
regulations, not the regulations themselves."  A.R. 106221.
Finally, the Manson Memorandum states that DOI has decided to
first focus on Yellowstone and Grand Teton National Parks and
learn from the final decisions related to those parks before
considering general changes in the regulation of recreational
snowmobile use in other parks.

## II.   ANALYSIS

### A.   Challenge to Expired Winter Use Plan

In Claims One through Three of their Amended Complaint, plaintiffs allege that the 2004 Temporary Winter Use Plan violates this Court's previous orders, the Organic Act, the Yellowstone Act, the National Environmental Policy Act, the Endangered Species Act, and the Administrative Procedure Act.  As discussed below, all claims related to the 2004 Temporary Winter Use Plan are now moot because the Rule has expired.

A federal court lacks jurisdiction to "to consider the merits of claims that are deemed 'moot,' because 'the judicial power extends only to cases or controversies.'  A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Tuscan Med. Ctr. v. Sullivan*, 947 F.2d 971, 977 (D.C. Cir. 1991) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *see also Schering Corp. v. Shalala*, 995 F.2d 1103, 1105 (D.C. Cir. 1993) ("An action is moot when nothing turns on its outcome.").

A challenge to agency regulations becomes moot once those regulations expire.  *See Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir. 2005) (finding moot challenge to Fish and Wildlife Service regulations because the regulations were only relied on for the 2001-2002 and 2002-2003 hunting seasons and were no longer in effect); *see also Fund For Animals, Inc. v.*

6

*United States BLM*, 460 F.3d 13, 18-19 (D.C. Cir. 2006) (finding
as moot a challenge to a temporary "Instruction Memorandum"
because the memorandum had expired); *In re Bluewater Network*, 234
F.3d 1305, 1314 (D.C. Cir. 2000) ("Petitioners do not here
challenge the 1997 temporary regulations, either for what they
did or did not do; those regulations have expired.  Whatever
issues could have been raised regarding their legality are
moot.").  By its own terms, the Final Rule enacted in 2004 does
not regulate any activity beyond the 2006-2007 winter season,
which ended several months ago.  Without further rulemaking, no
snowmobiles or snowcoaches will be allowed in the parks in future
winter seasons.  *See* 27 Fed. Reg. 27,499, 27,501.  NPS has
already released a new draft Winter Use Plan and a draft
Environmental Impact Statement ("EIS") for public comment.  NPS
has also published draft interim rules for the 2007-2008 winter
season for public comment and the interim rules are scheduled to
be finalized by the Fall 2007.  *See* http://www.nps.gov/yell/
planyourvisit/winteruse.htm.  As such, any challenge to the 2004
Plan is moot as that temporary plan has run its course and no
longer governs winter snowmobile and snowcoach use in the parks.
The Court therefore does not address the merits of plaintiffs'
challenge to the 2004 Temporary Winter Use Plan because any legal
challenge to this expired plan is moot.  Accordingly, the Court

**denies as moot** plaintiffs' Renewed Motion for Summary Judgment as to Claims One through Three.

### B.    Denial of Rulemaking Petition

In Claim Four of their Amended Complaint, plaintiffs challenge the denial of Bluewater Network's Rulemaking Petition requesting that NPS issue regulations banning trail grooming and snowmobile use throughout the National Park system.  Plaintiffs argue in their Renewed Motion for Summary Judgment that the Court should vacate the denial of Bluewater Network's Rulemaking Petition and remand that decision back to NPS.  Plaintiffs claim that the denial of the 1999 Rulemaking Petition cannot be reconciled with the earlier contrary decision of the Department of the Interior, and the federal defendants are therefore acting in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" in violation of the APA.  5 U.S.C. § 706(2)(a).

To survive a challenge under the "arbitrary and capricious" standard of the APA, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also Arkansas Power & Light Co. v. ICC*, 725

F.2d 716, 723 (D.C. Cir. 1984) (noting that the Court's role "is limited to ensuring that the agency has adequately explained the facts and policy concerns it relied on, and that the facts have some basis in the record"). The Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974); *see also Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 13 (D.C. Cir. 1987) (indicating that the Court must consider whether the agency's decisionmaking was "reasoned" (citation omitted)).

Review under the "arbitrary and capricious" standard "encompasses a range of levels of deference to the agency, and . . . an agency's refusal to institute rulemaking proceedings is at the high end of the range." *Am. Horse Prot. Ass'n*, 812 F.2d at 4-5 (citations omitted). "Such a refusal is to be overturned only in the rarest and most compelling of circumstances, which have primarily involved plain errors of law, suggesting that the agency has been blind to the source of its delegated power." *Id*. at 5 (internal quotation marks and citations omitted); *see also Massachusetts v. EPA*, 127 S. Ct. 1438, 1459 (2007) ("Refusals to promulgate rules are thus susceptible to judicial review, though such review is 'extremely limited' and 'highly deferential.'" (quoting *Nat'l Customs Brokers & Forwarders Ass'n v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989))).

Under the National Park Service Organic Act ("Organic Act"), NPS shall "regulate and promote the use of" national parks "by such means and measures as conform to the fundamental purpose of the said parks, . . . which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."  16 U.S.C. § 1.  Plaintiffs argue that the Secretary of the Interior is ignoring its mandate provided in the Organic Act by denying Bluewater Network's Rulemaking Petition in its entirety.  Plaintiffs further argue that the agency's failure to even prohibit two-stroke snowmobiles throughout the parks despite significant evidence in the record on their harm. Finally, plaintiffs argue that the agency ignored its statutory mandate in denying the Rulemaking Petition because the Department of the Interior did not even compile a new administrative record before Assistant Secretary Manson articulated a decision completely at odds with the determination his predecessor made in 2000.

Although plaintiffs did not get the answer they wanted to the Rulemaking Petition, nonetheless, the Department of the Interior has "cogently explain[ed] why it has exercised its discretion" to deny the Rulemaking Petition.  *See State Farm*, 463 U.S. at 48-49 (citations omitted).  The Manson Memorandum

explains that the Barry Memorandum initially recommended a
favorable response to the Rulemaking Petition because of the poor
state of compliance with existing regulations in some park units.
A.R. 106217.  It goes on to explain the significant progress that
has been made since 2000 in understanding the impact of
snowmobile use based on the management of such use at
Yellowstone.  A.R. 106217-106219.  Finally, the Manson Memorandum
provides a number of reasons based on the lessons learned from
Yellowstone why it is not "necessary or appropriate to require
each other park that permits recreational snowmobile access to
repeal its existing Part 7 special regulations at this time":
(1) NPS needs to learn from the final decisions made for
Yellowstone and Grand Teton National Parks and determine how
those lessons can be applied elsewhere; (2) improved snowmobile
technology that was not considered in 2000 is now available and
may be able to address the impacts at some parks; (3) NPS park
staff at each park have the greatest expertise as to that park's
resources and use patterns and the effect of snowmobile use in
the park; (4) given the differences among parks, a service-wide
directive to prohibit all forms of recreational snowmobile use in
the National Park System is not warranted and decisions need to
be made on a park-by-park basis drawing on the lessons learned
from Yellowstone; (5) road grooming for snowmobile use only
happens in five parks and is most appropriately addressed on a

park-by-park basis given that the wildlife species affected and
the nature of the impact of grooming varies from park to park;
(6) existing road grooming is essential to guaranteeing access
for visitors and park staff; and (7) while compliance with
existing regulations is problematic at times, there is no
evidence that Executive Orders 11644 and 11989 and existing NPS
regulations are inadequate to protect park resources.  A.R.
106219-106221.

The Court cannot conclude that this explanation for denying
the Rulemaking Petition suggests that DOI was "blind to the
source of its delegated power," *Am. Horse Prot. Ass'n*, 812 F.2d
at 5, to conserve natural resources and wildlife and protect the
unimpaired enjoyment of the parks for future generations.  Given
the differences between the geography, wildlife, and snowmobile
use in different national parks throughout the country, the Court
finds that DOI has articulated a satisfactory explanation for its
decision to learn from efforts to monitor and eliminate the
negative impacts of snowmobile use in Yellowstone where
snowmobiles are heavily used and apply the lessons learned to
other parks.  The Court cannot conclude that DOI's decision to
undertake a park-by-park approach, drawing on the expertise of
the staff at each park, is not rational given the different
circumstances faced in different parks and the varying degrees of
impact of snowmobile use at different parks.  The Court does not

find that this is one of those cases that presents the "rarest and most compelling of circumstances" that warrants remand of the agency's decision to deny a rulemaking petition.   Accordingly, the Court **denies** plaintiffs' Renewed Motion for Summary Judgment as to the denial of Bluewater Network's Rulemaking Petition.

## III. CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' Renewed Motion for Summary Judgment.   Upon consideration of the motion and supplemental briefing on the issue of mootness, the Court finds that Claims One through Three of plaintiffs' Amended Complaint are moot and therefore dismisses these claims.   In denying plaintiffs' Renewed Motion for Summary Judgment as to Claim Four of plaintiffs' Amended Complaint, the Court determines that there has been no violation of the APA and declines to set aside and remand Bluewater Network's Rulemaking Petition.   The Court therefore dismisses Claim Four because there is nothing left for the Court to resolve on this issue.   Because the denial of plaintiffs' Motion for Summary Judgment denies all relief to plaintiffs by resolving all claims in favor of defendants and against plaintiffs, the Court enters judgment in favor of defendants.   An appropriate Order accompanies this Memorandum Opinion.

**Signed:     Emmet G. Sullivan**
             **United States District Judge**
             **September 24, 2007**

13